CITY OF BOSTON *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.    January 10, 1913. — May 24, 1913.

Present; RUGG, C. J., MORTON, HAMMOND, BRALEY, & SHELDON, JJ.

*Boston. Boston Elevated Railway Company. Washington Street Tunnel. Words, "Construction."*

Sections 7, 10, of St. 1902, c. 534, which authorized the construction of the Washington Street tunnel in Boston, provided that from the beginning of the use of the tunnel the Boston Elevated Railway Company should pay to the city of Boston an annual rental equal to four and one half per cent of the net cost of the tunnel and subway, and that the value of property taken but no longer needed for the purposes of the tunnel should "be deducted from the cost of the tunnel . . . for the purpose of ascertaining the rental thereof." Section 16 provided that all rents received by the city for the use of any lands or rights taken should be used by the treasurer of the city, with the rents received for the use of the tunnel and subway, for meeting the sinking fund requirements and the interest of the bonds issued by the city under the act, and that any surplus should be used as a part of the general revenue of the city. Certain portions of land taken under the act and paid for by bonds issued by the city under the act became unnecessary for the purposes of the tunnel. During a period of time before the beginning of the use of the tunnel the city paid interest on the bonds issued to

pay for the land and received rents from the land. *Held*, that the net cost of the tunnel was to be ascertained as of the time when its use began and that the deduction of the value of property taken and not needed should be made as of that time.

CONTRACT by the city of Boston against the Boston Elevated Railway Company for $35,038.69 alleged to be due as rent for the use of the Washington Street tunnel under a contract of lease dated September 25, 1902, and authorized by St. 1902, c. 534. Writ dated August 10, 1911.

In the Superior Court the case was submitted upon an agreed statement of facts to *Irwin, J.*, who reported it for determination by this court.

*J. P. Lyons*, for the plaintiff.

*A. A. Ballantine*, for the defendant.

RUGG, C. J. The plaintiff brings this action to recover rental for the Washington Street tunnel. For the completion of the tunnel with its approaches the city of Boston took three estates, which thereafter became in part unnecessary for tunnel purposes. The value of the surplus portions of these estates was agreed upon by the parties, and this value was deducted from the gross cost, in order to ascertain the net cost for the purpose of fixing the rental to be paid to the city by the defendant. The takings and proceedings are agreed to have been regular. The city paid for these estates by bonds issued as provided by law, and paid interest thereon. Payments for these takings were made a considerable time before the value of the surplus takings was agreed upon. During this interval of time the city paid interest on the bonds it had issued in payment for the estates, and received certain rentals from parts of the estates. The only question to be decided is the point of time when the deduction of the agreed value of the surplus takings shall be made, whether (1) at the time of the payments for the takings, or (2) at the time of the opening of the tunnel when the rental was fixed.

The decision depends upon the construction of §§ 7, 10 and 16 of c. 534 of St. 1902. The statute makes no express provision touching this matter. It must be examined as a whole, and reasonable effect given to all its terms. The substance of § 7 is that the value of property taken but no longer needed "shall be deducted from the cost of the tunnel . . . for the purpose of as-

certaining the rental thereof." This is the only provision in the act for any deductions from the expenses incurred by the city. There is no indication of intention that sums received for the temporary rent of property taken but determined finally not to be needed should be deducted from the initial cost in order to ascertain the cost upon which should be based the rental to be paid by the defendant. Indeed, that there was no such legislative intention is manifest from § 16 in this language: "All rents, tolls, percentages or other annual compensation received by the city for any use of the tunnel or subway under this act, or for any use of any lands or rights taken under authority of this act, shall annually be used by the treasurer," (1) to meet sinking fund requirements, (2) to meet interest on bonds, and (3) the surplus to the general revenue of the city. In view of this express provision, the fact that the rental received by the city from the surplus real estate involved in this action was large in amount must be regarded as an immaterial circumstance in deciding the case at bar. The Legislature has determined with precision, in terms not open to controversy as to meaning, the accounts to which such rent must be credited.

Section 10 requires the annual rental, which the defendant shall pay to the plaintiff, to be "equal to four and one half per cent of the net cost of the tunnel," and later defines "net cost" as including "all expenditures incurred in acquisition and construction, including damages, expenses and salaries of the commission, and interest at three and one fourth per cent per annum on the debt incurred in construction prior to the beginning of the use." This language is broad enough to include the interest on all the bonds issued for payment of the lands here in question. Indeed, it is explicit in this respect. The bonds issued for the purpose of securing money to pay for these takings constituted a debt incurred in acquisition and construction. The only way in which the city was permitted to procure the money with which to meet expenses, both of acquisition and construction, was by the sale of bonds as provided in § 16. The interest on these bonds, not at the rate actually paid, but at a rate fixed by the statute, is included in the net cost of the tunnel. That the word "acquisition" is not repeated at the end of the sentence above quoted is not of much significance. The statute is to be interpreted in the light

of the broad purposes to be accomplished under it. "Construction" in this connection is a word of import large enough to include takings of land. Moreover, the statute makes no provision for a division of the debt between acquisition and construction expenses, nor for interpreting these two words as antithetical. All bonds issued under the statute are to be designated on their face "Boston Tunnel and Subway Loan." It is plain that the statute does not undertake with nicety and exactness to reimburse the city for its cost. While by § 16 the rate of interest it may pay on such bonds as these is four per cent, the interest, which may be charged on such indebtedness in ascertaining the net cost on which the rental to be paid by the defendant is based, is only three and one fourth per cent. In face of this provision, the argument that the defendant suffers an injustice by permitting the city to retain its rental of surplus land loses much of its force. Other considerations and circumstances may have been within the contemplation of the Legislature in using defined rates of interest, rather than the actual amounts paid with deductions for *ad interim* income.

The conclusion is that the natural meaning of the statute, construing its words according to their common significance, is that the net cost of the tunnel is to be ascertained as of the time when its use begins, and that the deduction for surplus property taken should be made as of that time. In no other way can the city receive interest on the cost to it of the tunnel during construction, and the rents received from such surplus land be contributed to its sinking fund and other specified use.

Judgment should be entered in favor of the city for the entire amount claimed by it, and it is

*So ordered.*